24131. BRANTLEY *v.* CITY OF DUBLIN.

DECIDED NOVEMBER 15, 1934.

160

*E. L. Stephens, R. I. Stephens,* for plaintiff in error.

*W. W. Larsen Jr., S. P. New,* contra.

MacIntyre, J. Having been convicted in the recorder's court of the City of Dublin of doing business without a license, Claud B. Brantley, by certiorari, carried his case to the superior court, and the question for determination here is whether or not the judge of the superior court erred in overruling the certiorari.

After proving, in effect, that the defendant operated automobiles for hire in the City of Dublin during the year 1934, without paying his license tax for so doing, the city rested its case.

The defendant introduced in evidence the following certificate:
*"Order authorizing ex-soldier to peddle or conduct business.*
 "Georgia, Laurens County, Ordinary's Office.
 "Dublin, Ga., Dec. 14th, 1925.
"I, E. D. White, Ordinary of said county, certify that C. B. Brantley, a disabled and indigent, Private Battery A 118 F., a soldier of said county, has come before me and taken oath prescribed by law required of disabled, indigent soldiers to authorize them to peddle, or conduct . . ."

Under § 1888 of the Code of 1910 as amended (Michie's Code (1926), § 1888, Park's Ann. Code (1914), Vol. 8 (1922), Supp., § 1888), "any disabled or indigent soldier or soldiers of the . . late European war . . who is a resident of this State, may . . conduct business in any town, city, county, or counties thereof without paying license for the privilege of so doing, and a certificate from the ordinary of any county stating the facts of his being such disabled or indigent . . soldier, or soldiers of the . . late European war . . , who is a resident of this State, shall be sufficient proof . . " The above-quoted certificate fails to show that the defendant was a soldier of the "late European war," and, to our minds, fails to comply with the statute in a most material matter. We therefore think that it can not be taken as "sufficient proof" of the facts which make the exemption. Having reached this conclusion, we have merely to consider the case in the light of all the evidence and determine whether the evidence supports the judgment of the recorder.

The defendant next introduced, without objection, a certificate from the War Department of the United States, which was dated October 16, 1930. The material part of this certificate is as fol-

lows: "Know ye, that Claud B. Brantley, a Private of Battery A, One Hundred Eighteenth Field Artillery United States Army, who was inducted on the seventh day of September, 1917, at Dublin, Georgia, to serve for a period of the emergency, was honorably discharged from the service of the United States on the 28th day of January, 1918, by reason of disability. . . " The defendant then made the following statement: "I was a world-war veteran, and was discharged January 28th, 1918, with a disability discharge, and I have been operating a business here eight or ten years with a disability certificate from the ordinary without paying license tax. However, I haven't been making any money. I have just been operating and keeping going. As far as being disabled, I am as much disabled now as I was when I was discharged from the army. I would say more so. I have been operating a business without license because I had the government license, and they have always been good. I haven't any property or income whatever. I have been drawing compensation from the government. That is an income on account of my disability." After making his statement the defendant closed his case.

Frank Johnson, sworn for the city, testified as follows: "I see Mr. Brantley often. I have seen him practically every day for the last few years. His apparent physical condition all that time seemed good. He has been regular on the job at work for the last few years. He has some property—automobiles—engaged in this business. He hasn't made a return for 1934; it was copied for 1933. I have that return before me. Mr. Rogers, the clerk, copied it from 1933. Mr. Brantley didn't sign it." On cross-examination this same witness swore: "I am a policeman of the City of Dublin and designated as license inspector. I am not a physician. Medically speaking, I don't know whether Mr. Brantley is suffering from heart disease or not. The only thing I base my opinion on is that I see Mr. Brantley around town occasionally. I don't know whether he has heart disease or several other diseases or not, which disables him and keeps from work. I don't know of Mr. Brantley [doing?] any physical labor in the last few years. I have seen him hunting and running his business. He does the book work in the business. I have never seen him strike a lick of manual labor. I don't know that he is disabled to the

extent that doing manual labor would jeopardize his life. Not from direct information would I say that Mr. Brantley owned any property at all."

M. A. Rogers, sworn for the city, testified: "I am clerk of the City of Dublin. As such it is my duty to receive tax-returns. I know Claud B. Brantley, I don't think he has made a return for 1934. I made the return that is open before me—his 1933 return, I made that return. Mr. Johnson handled the collection part, so I wouldn't say whether it was paid or not. That return made there for $500 for automobiles, I made myself. I have known Claud Brantley for twenty years. I don't see him so very often. So far as I know, he has been in good health and apparently robust during that time. I have known of him being sick. I think he has the appearance of a man with common ordinary health; he doesn't look bad. I haven't seen him engaged in his work." On cross-examination the same witness testified: "I don't know whether he owns any of the property now that he owned in 1933 or not. Johnson said he paid the taxes for 1933. I don't know what disease or what disability Mr. Brantley has. I base my answer on just seeing him and he appearing to be a healthy man. I am not a physician. I haven't examined Mr. Brantley. I wouldn't say but what he is suffering from some heart disease. I don't know whether he owns any property or not. When I make the return, I just suppose they do. I don't know whether he has a penny of income or not."

E. C. Pierce, sworn for the city, testified: "I know C. B. Brantley. I have known him for about twenty years. I am chief of police of Dublin. I was chief here in 1928 and 1929. I have served as deputy sheriff and county policeman on other occasions. I see Claud Brantley about every week, sometimes every day, or two or three times a day sometimes. I have seen him around his place of business. He has the appearance of being a strong and robust healthy man." On cross-examination this witness swore: "I have seen Mr. Brantley around his place of business and on the streets. I don't know what his conditions are physically. I would not say whether or not he has heart disease. I could not look at him and tell. I reckon he could have several diseases that if he did any labor would jeopardize his life. Wouldn't say whether he had any income or not, but I have seen people go in

there and get cars." On redirect examination, this witness testified: "In my duty as chief of police he has appeared before me to stand bonds for people charged with violating the city ordinances. He said he was worth the bond, and that the sheriff took him on bonds. He has done that on more than one occasion." On recross examination this witness testified: "He asked to be taken on the bonds, and he said he had property. It was $25 bonds. We take people on bonds that don't own any property at all. I went to clerk's office and picked up the tax-digest and saw where he returned $500 for automobiles. I did not see any real estate returned. I don't know who made the return I looked at. It was the 1933 return. I don't know whether he owns any property as shown on that return or not for 1933."

We quote from the record as follows: "Tax-digest for 1933 was tendered in evidence by the city showing that on the return made by Mr. Rogers, clerk of City of Dublin, for defendant, $500 worth of automobiles, and same paid on the 19th day of April, 1933, before fi. fa. was issued." The record next recites: "The court admitted the digest on the idea that Mr. Brantley ratified the return by paying the taxes."

Here the city closed its case, and, after making the following supplemental statement, the defendant also closed his case: "About those taxes that were paid there. The record at the court-house shows that I don't return any property for taxes whatever. The property Mr. Rogers paid for me,—it is true that I paid them, but I paid them for the parties that owned the property. I have been examined twenty or twenty-five times by different doctors and every one has said I had heart disease and other diseases."

"On interlocutory hearing of a suit to enjoin sale of property, involving the right of a soldier to operate a private business in a city without payment of a license fee, the plaintiff introduced a certificate by the ordinary as above stated, and his own testimony and the testimony of a physician as to his being a disabled man; and the defendants introduced the testimony of other persons tending to show that he was not a disabled man. The conflict of evidence is for decision by the judge." *Kelly* v. *Jefferson,* 178 *Ga.* 427 (3) (173 S. E. 133). Paragraph 4 of that decision indicates the nature of the testimony of the "other persons" mentioned in the part quoted above. It is as follows: "Testimony of non-expert

witnesses to the effect that they had observed the plaintiff in operating his business, and, basing their opinion on their observations and the amount of work done by him, that he is not a disabled man and that he does as much work as ever, was admissible over the objections "that they did not qualify as practicing physicians or to give expert testimony, and could not testify as to the physical condition of the plaintiff, and by oral testimony attempting to controvert a judicial judgment of the court of ordinary." It appears, from an examination of the record in that case, that the evidence adduced in behalf of the City of Jefferson to overcome the strong case made by Kelly as to his disability is very similar to the testimony of the non-expert witnesses in the instant case. For instance, one witness in the *Kelly* case deposed as follows: "He personally superintends the operation of the garage and looks after the sale of Chevrolet automobiles for Jefferson, and keeps his own books— works on cars and everything that comes to hand about his business." In the instant case there is testimony given by witnesses who had known Brantley for a long time to the effect that they had observed him for many years in and about his business, and that he ran that business and kept his books, and had the appearance of an "able, healthy man." One witness swore: "I have seen him hunting and running his business." None of the doctors who examined the defendant "twenty or twenty-five times" and said he had "heart disease and other diseases" testified in the case. The defendant's statement is strong, but "it is well settled that a jury has the right to accept a defendant's statement altogether, or to reject it altogether, or to believe it in part, or to disbelieve it in part." *Rivenbark* v. *State, 36 Ga. App.* 741 (5) (138 S. E. 258). Under the conflicting evidence in the case, we are constrained to hold that the evidence supports the finding that the defendant was not disabled. In a case like this, the defendant does not have to show that he is both disabled and indigent in order to be exempt from paying the city a license tax; proof that he is disabled *or* that he is indigent is sufficient. See *Holliman* v. *Hawkinsville,* 109 *Ga.* 107 (3-a) (34 S. E. 214). We see no necessity here for restating the evidence bearing upon the question as to whether or not the defendant was indigent. There is a conflict in it, and we are satisfied that a finding that the defendant was not indigent is

supported by the evidence. We therefore hold that the judge of the superior court did not err in overruling the certiorari.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*